# IN RE RULE ON R. P. KENNEDY.

## ERROR TO THE COURT OF COMMON PLEAS OF FAYETTE COUNTY.

### Argued May 10, 1888—Decided May 21, 1888.

1. It is only when money has been collected by an attorney in the relation of attorney for the petitioner, that the court may interfere in a summary manner to enforce its payment by a rule and order.
2. When, therefore, the application for a rule is based upon an averment that the relation did not exist, and this averment is denied by the respondent, an issue of fact is raised in which the attorney is entitled to a trial by jury.
3. And if the answer to the rule should convince the court that the money was withheld in good faith and believed to be not more than an honest compensation, the rule will be dismissed and the petitioner remitted to his action at law.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 270 January Term 1888, Sup. Ct.; court below, No. 191 September Term 1882, C. P.

On September 25, 1882, to the number and term of the court below referred to, there was entered a judgment of revival of judgment to No. 259 September Term 1877, for the sum of $1,000, in favor of Elizabeth A. Walker (formerly Murtland), and Joseph Walker, her husband, against Asa Huntley.

On September 3, 1872, Abner L. Lynn presented his petition representing:

That at the above number and term, and on the above judgment, sixty dollars a year is payable every seventh of August, of each year, to your petitioner as guardian of Wm. H. Murtland, until his arrival at age, when the principal sum will be paid. That Robert P. Kennedy, of this bar, without any authority from your petitioner, entered his name as attorney, after the revival of the judgment by my attorney, G. W. K. Minor, and collected the interest, without ever having been employed by your petitioner to do so, and on the 7th

of last month collected sixty dollars interest in this way and refused to pay it over.  Your petitioner has frequently requested him to do so, and has had his attorney to demand it, and he still persists in not paying it over.  Your petitioner prays your honor to grant a rule on said Kennedy to show cause why he should not pay over said money forthwith to your petitioner, or his attorney, and why his name should not be erased from the case mentioned, and to make such further order in the premises as would be right and proper, and he will ever pray, etc.

A rule having been granted as prayed for, on November 30, 1887, Mr. Kennedy filed the following answer:

R. P. Kennedy being duly sworn, in answer to the petition of Abner L. Lynn in the above cause, deposes and says: That Lynn asked affiant to revive the judgment at No. 259 September Term 1877, when W. H. Playford, Esq., was plaintiff's attorney, and that affiant declined to do so, because Lynn would not advance the prothonotary's fee for such revival, but said to affiant he would revive it himself, as he did to 191 September Term, 1882, a few days later.  This revival by Lynn's own præcipe was contested, and Lynn sought the aid of his former attorney, Mr. Playford, for that contest, which aid the latter declined to give him, being dissatisfied about Lynn's course in the matter.   G. W. K. Minor, Esq., for Lynn, then sustained Lynn's right to file a præcipe and revive the above judgment, and when this was all through with, Lynn came to Mr. Playford's office one day and tried to conciliate him about the matter, but Mr. Playford refused to talk about it and walked out, and then Lynn said to affiant who was present: " I've known Playford since he was a boy and want no hard feelings about this thing; I've settled with Minor for all he has done, and now want Playford and you to attend to this judgment for me."   Affiant afterwards told Mr. Playford Lynn's above remark, to which he replied that affiant could attend to the case, but that he would not.  Affiant then entered his name as plaintiff's attorney, and as such received $60.00 per year, for five successive years, beginning 1883, as interest on the above judgment.  These payments were made to affiant in August of each year, either by S. N. Springer or a Mr. Francis, for defendant, and during the same month, each

Statement of Facts.

year, except in 1887, were paid over by affiant to Lynn, in full. Affiant made such payments to Lynn promptly, and on demand, except in 1883, when affiant declined to pay Lynn on his first demand, because of Lynn's being so intoxicated as to be unable in affiant's judgment, to properly receive a check, and get money thereon. Affiant paid him a few days later that year, and each year, save in 1887, during the same month that affiant received said $60.00 interest. Lynn never told affiant to pay over any amount to the prothonotary or G. W. K. Minor, Esq., until affiant demanded a fee out of the last $60.00 received for services in collecting, receipting for and paying over to Lynn $240.00, and for collecting and receipting for $60.00 additional, of which no part has as yet been paid over to Lynn; though affiant twice offered to pay Lynn $50.00 of the unpaid $60.00, by check on the People's Bank of Uniontown, as affiant had paid Lynn $60.00 in that way each time before; and on Sept. 9, 1887, before the rule in this case issued, at the sheriff's office, in Uniontown, affiant made a good and lawful tender of $50.00 to Lynn, by counting out that amount of money before Lynn and there tendering it to him. Lynn refused said amount tendered, as he had previously refused a check for that amount, each time saying, "I'll have all or nothing." Affiant further says that Lynn has consulted with affiant about getting for Lynn the $1,000 principal upon which the $60.00 is paid annually as interest, and in 1886, affiant was promised $20 by Lynn if he would accomplish this. In all these conversations prior to Aug. 1887, and in 1883–'84–'85 and '86 when affiant gave Lynn checks for $60.00 each year, Lynn conferred with affiant as his attorney, spoke of no one else as such, and only as attorney for Lynn did affiant ever act in the above matter. Affiant further says that Lynn consulted him about other matters, and within the last year left a judgment note with affiant to collect against one O. P. Brashear, which note was not entered because Lynn did not advance $1.75 for the prothonotary, nor pay affiant any fee to have the same done. Affiant now asks the court to make an order allowing affiant 5 per centum commission on the $300 collected by him as above, said commission of $15 to be deducted from the $60.00 now in affiant's hands, with leave to affiant to pay the $45.00 balance into court, from which balance all costs on this rule shall be paid.

Testimony having been taken and filed, the court, EWING, J., without opinion in writing, on December 28, 1887, made the rule absolute and ordered the respondent forthwith to pay over to the petitioner or his attorney the said sum of $60 and that his name be erased as one of the attorneys for the plaintiffs. Thereupon the respondent took this writ assigning the said order as error.

*Mr. Edward Campbell*, for the plaintiff in error:

1. The plaintiff in error submits it to this court that the answer of Mr. Kennedy, taken together with the testimony of Abner Lynn, the petitioner for the rule, to say nothing of the other evidence shown to the court, shows conclusively that Mr. Kennedy was an attorney for the plaintiffs, that he kept back the ten dollars which is involved in this case, in good faith, and that it is not more than an honest compensation for the services which Mr. Kennedy rendered. Yet the court below saw fit in the exercise of what was supposed to be a judicial discretion, to accord so much importance to it as to decide virtually that this affidavit and testimony under the rule, destroyed Mr. Kennedy's answer, the testimony of the four checks, the testimony of the record and Lynn's own recital of the facts, all of which show as conclusively as testimony can show anything that Mr. Kennedy was attorney for Lynn, and as such attorney had charge of this Walker judgment for five years.

2. In Shoemaker v. Stiles, 102 Pa. 554, this court says that, "Where there is a dispute respecting the amount of fees and the attorney acted in good faith, his right to compensation is not forfeited should the jury find that he is entitled to a less sum than he claimed. But if he fraudulently claimed the right to retain out of the money of his client a larger sum than the jury find to be just, he forfeits all claim to any compensation whatever." While the question in the present case is not precisely one of the amount of the fee, yet the plaintiff in error maintains that the rule in both cases is the same. There is not the slightest pretence of fraud on Mr. Kennedy's part; the petitioner for the rule, while reciting Mr. Kennedy's services to him, simply persisting in the absurd assertion that he was not his attorney at all. The real question is, how

much is due Mr. Kennedy for the services which both parties agree were rendered, and this question the court below should not have assumed to decide. It should have been remitted to a jury. To this effect are all the authorities while there are none to the contrary: Balsbaugh v. Frazer, 19 Pa. 99 ; Dubois's App., 38 Pa. 231; Lodge v. Gaunt, 16 W. N. 438; Hatch v. Stitt, 66 Pa. 266.

3. The amount of money involved in this case being only ten dollars, would seem to indicate that Mr. Kennedy should not have troubled the court with it, but the question now made of it by Lynn is whether he has retained money belonging to his client after demand upon him for it. This brings the case, if it were not without such circumstances, within the provisions of the act of assembly of May 19, 1879, P. L. 66, giving a writ of error in all cases of any proceedings in any court against any attorney for unprofessional conduct. The act of assembly of April 14, 1834, P. L. 354, provides that if any attorney shall retain money belonging to his client after demand made by the client for the payment thereof, it shall be the duty of the court to cause the name of such attorney to be stricken from the record of attorneys and to prevent him from prosecuting longer in the said court. A court should not strike an attorney's name from the roll until the fact of retaining his client's money is established, and the court itself would hardly undertake to establish that fact, if it were disputed. In the present case, Lynn denies that he ever was Mr. Kennedy's client. Mr. Kennedy most emphatically asserts that Lynn was his client and produces evidence in corroboration which must be admitted to be strong. These allegations clearly involve Mr. Kennedy's professional conduct, and he submits it to this court that in the court below he was treated erroneously.

*Mr. G. W. K. Minor*, for the defendant in error:

The cases cited by the counsel for Mr. Kennedy in his paper book, were between attorney and client, and have nothing to do with this case. Here there was no such relation as attorney and client. Not one particle of evidence except Mr. Kennedy's answer, and it is evasive and incorrect under the evidence. His checks to Lynn were never in evidence and go

for nothing, and could have no weight legally or otherwise, if they had. The court below understood the facts and the law in this case perfectly, and under its order there certainly was no error.

OPINION, MR. JUSTICE PAXSON:

This is a very small case, so small that it would have been better for all parties concerned had they kept it out of this court. The amount in controversy is but ten dollars, being a sum retained by the respondent as a fee for collecting a sum of money under the following circumstances:

The respondent had entered his appearance as attorney for the plaintiff in a judgment, Walker v. Huntley, No. 191 September Term 1882, in the Common Pleas of Fayette county. The interest on this judgment, $60 per annum, was paid to him for about four years, and all of it except the last payment of $60 was paid over to the party entitled thereto. From the last sum he claimed to deduct the sum of $10 as a fee and tendered the petitioner the balance thereof, $50. This the latter declined to receive and presented his petition to the court below, alleging the refusal to pay, and averring that respondent was never employed by him as an attorney and had no authority to collect the interest money in question. The respondent answered the petition, alleging that he was employed as counsel and had the right to receive the money in that capacity. The court below made an order requiring the respondent to pay over the money.

If the allegation of the petitioner is true, that there was no relation of attorney and client between them, it is very plain that the petitioner is out of court. It is only by virtue of such relation that the court has any jurisdiction to interfere in a summary manner. The court might as well make an order upon an attorney to pay his tradesmen's bills.

In Balsbaugh v. Frazer, 19 Pa. 95, the rule was thus laid down in respect to the right of an attorney to retain his fees out of money in his hands: "If the client is dissatisfied with the sum retained, he may either bring suit against the attorney or take a rule upon him. In the latter case the court will compel immediate justice or inflict summary punishment upon the attorney, if the sum be such as to show a fraudulent in-

tent. But if the answer to the rule convinces the court that it was held back in good faith and believed not to be more than an honest compensation, the rule will be dismissed and the client remitted to a jury trial." And we may add to this that a man does not lose his right to trial by jury because he is an attorney-at-law. Where an issue of fact is fairly raised between himself and his client he is as much entitled to such trial as any other citizen.

In the case in hand the only disputed fact was whether the respondent was of counsel for the petitioner. The latter as before stated, denied the existence of any such relation. The court below decided this question of fact against the respondent, ordered the money to be paid over by him, and that his name be stricken from the record of the judgment.

In any view of the case the order must be reversed. If we concede the right of the court to find the disputed fact of the professional relation, the facts as found put the petitioner out of court. On the other hand, if the relation of attorney and client existed, the fee charged was so moderate that no reasonable man would think of disputing it. That some relation of attorney and client existed between these parties appears from the statement of the petitioner. And there is some implication of such a relation in the fact that the respondent had collected the interest on this judgment for some years and paid it over to the petitioner.

The order is reversed at the costs of the petitioner below.