# Balogh *v.* Jackson, Appellant.

*Attorneys-at-law—Retention of client's money—Breach of fidelity to client—Disbarment—Trial by jury—Acts of April 14, 1834, P. L. 354, and June 16, 1836, P. L. 793.*

1. In a disbarment proceeding, an attorney is not entitled to a trial by jury.

2. Where an attorney-at-law receives from a client a large sum of money under the allegation that it was necessary to secure bail, and subsequently acquiesces in the quashing of a writ of habeas corpus, without consulting his client and without his knowledge, and there is no evidence of the commission of any crime by the client, it is proper for the court, under the Act of April 14, 1834, P. L. 354, summarily to disbar the attorney without the allowance of a jury trial; and this is the case although the attorney claims that he retained the money as a fee.

3. In such case there would be nothing for a jury to pass upon; for, whatever fee the attorney might have been entitled to claim,

if he had acted according to proper standards of professional honor, was forfeited by his fraudulent conduct and lack of fidelity to his client.

Argued October 25, 1921.  Appeals, Nos. 117 and 118, Oct. T., 1921, by defendant, from order of C. P. Allegheny Co., Jan. T., 1920, Nos. 1212 and 2258, making absolute rule to disbar, in case of Thomas Balogh v. Richard H. Jackson.  Before MOSCHZISKER, C. J., FRAZER, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ. Affirmed.

Rule to pay over money to client.
Rule to disbar.  Before SWEARINGEN, J.
The opinion of the Supreme Court states the facts.
Rules absolute.  Defendant appealed.

*Errors assigned* were, inter alia, above orders, quoting them.

*S. S. Robertson,* for appellant.

*Ralph J. Brown,* with him *Joseph F. Mayhugh,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, January 3, 1922:
We have approached the consideration of these appeals with a full realization of the consequences to appellant of our action on them.  He has long been a member of the Allegheny County Bar, and has occupied a position of prominence in the community to which it ministers, having been for several years district attorney of that important and populous county.  The order of the court below is one of disbarment, striking his name from the roll of attorneys practicing before it.

Appellant challenges the order complained of in but one respect; he contends that he is entitled to a trial by jury.

There are two appeals here from two proceedings in the court below; one under the Act of June 16, 1836, P. L. 793, Stewart's Purdon, vol. 1, p. 375, for an order requiring the respondent to turn over money in his hands belonging to a client, the petitioner, and the other, under the Act of April 14, 1834, P. L. 354, Stewart's Purdon, vol. 1, p. 374, for disbarment. Both proceedings were decided against appellant, and the latter, to some extent at least, depends upon the former, for if the former falls, so may the order of disbarment. The controlling question now before us is, Did the court, in summarily disposing of the first-mentioned petition, proceed properly, or was the respondent entitled to a trial by jury?

Thomas Balogh, the petitioner, was arrested on a warrant charging him with being a fugitive from justice in the State of New York; the crime, lying back of this charge, was murder. He was incarcerated in the Westmoreland County jail, where appellant, summoned by the prisoner's wife, visited him professionally. While there, he obtained from the accused cash and checks on banks at Gary, Indiana, aggregating more than $4,000. The court below found as a fact that this money was received by appellant, for the purpose of pledging it as security to whosoever should become petitioner's bail, and that appellant did not attempt to secure bail for him. It further found that, on the hearing of the writ of habeas corpus granted by the Westmoreland County court, for the release of the accused from custody, appellant consented that the writ be quashed and the petitioner remanded to jail, without the consent or knowledge of the accused and with no evidence produced against him. He was subsequently released from custody, not by reason of any act or effort on the part of appellant, but because the authorities in New York advised they had no charge to press against the prisoner. The court also found that appellant had converted his client's money to his own use, and that demand had been made for the return of it. Appellant contended that

the money in question was received by him as fees for professional services; but the court, in the light of the circumstances, upon ample testimony, properly held this contention could not be sustained. Even if the facts were otherwise, the gross breach of fidelity to his client, in acquiescing in the quashing of the writ of habeas corpus, without consulting him and without his knowledge, when there was no evidence of the commission of any crime, stands without any satisfying explanation by appellant.

In the Act of April 14, 1834, it is provided: "If any [attorney] shall retain money belonging to his client, after demand by the client for payment thereof, it shall be the duty of the court to cause the name of such attorney to be stricken from the record of the attorneys, and to prevent him from prosecuting longer in the said court." By the Act of June 16, 1836, it is enacted: "The several courts aforesaid shall have power......to make rules upon attorneys for the payment of money, and the delivery of deeds, and other papers in their hands, belonging to their clients, and in every such case to enforce obedience to such rules by attachment." These acts of assembly have received our construction, and the power of the courts acting under them has been clearly defined.

While Balsbaugh v. Frazer, 19 Pa. 95, was not a proceeding by rule, but an action of assumpsit to recover moneys collected by the defendant as an attorney-at-law, the rights and duties which spring from the relation of attorney and client were there laid down by Chief Justice BLACK, speaking for this court. Referring to the question which now concerns us, he said, "if the client is dissatisfied with the sum retained [for fees], he may either bring suit against the attorney, or take a rule upon him. In the latter case the court will compel immediate justice, or inflict summary punishment on the attorney, if the sum retained be such as to show a fraudulent intent. But if the answer to the rule con-

vinces the court that it was held back in good faith, and believed not to be more than an honest compensation, the rule will be dismissed, and the client remitted to a jury trial. But if he has not acted in good faith; if he has attempted to defraud his client,......he forfeits all claim to any compensation whatever."

In Martin's Petition, 237 Pa. 159, we took occasion to say, the "relation [of attorney and client] is so confidential in its nature that it calls for the exercise of the most perfect good faith. In transaction between counsel and client, no shadow of anything like deception or unfair dealing, upon the part of an attorney, can be countenanced. In every case in which complaint is made, the courts will scrutinize the transaction with jealous care to see that there is no relaxation of the rule......Anything which savors of lack of good faith upon the part of an attorney such as......the refusal or neglect to pay over promptly upon demand, calls for forfeiture of all claim to compensation." In that case, by order made in this court, counsel were deprived of all compensation because of their dereliction in duty.

In Kennedy's Case, 120 Pa. 497, after quoting from Balsbaugh v. Frazer, it is said, "A man does not lose his right to trial by jury because he is an attorney-at-law. Where an issue of fact is fairly raised between himself and his client he is as much entitled to such trial as any other citizen." In thus expressing itself, the court was speaking of cases where the answer made to the rule convinces the court that the money was held back in good faith.

In no case, brought to our attention, has it been held that an attorney, accused of withholding money belonging to a client, is entitled to a jury trial, save where there was an honest dispute between lawyer and client as to the amount due the latter for fees. In this class of cases, there is a preliminary inquiry by the court,—just as there would be on the request for an issue devisavit vel non and certain other issues,—as to whether the dis-

pute is in good faith and meritorious, and, only if found to be such, is the issue remitted to a jury to determine the amount due; if, however, the court reaches the conclusion, on the preliminary inquiry, that there was bad faith, overreaching, fraud or dishonesty on the attorney's part, it proceeds summarily to dispose of the matter by order.

"The power of a court to disbar an attorney should be exercised with great caution, but there should be no hesitation in exercising it, when it clearly appears that it is demanded for the protection of the public. The court, by admitting an attorney to practice, endorses him to the public as worthy of confidence in his professional relations, and if he becomes unworthy, it is its duty to withdraw its endorsement. It is unimportant, as affecting the right and duty of the court in disbarment proceedings, where the misconduct of the attorney occurs. ......Aside from the general power of the court in the matter, section 74 of the Act of April 14, 1834, P. L. 333, makes it the duty of the court to strike from the roll of attorneys any one who shall retain money belonging to a client after demand": In re Graffius, 241 Pa. 222.

Mr. Justice Dean, in his forceful way, thus vindicated the power of the court to deal with the derelictions of attorneys at its bar, in Smith's App., 179 Pa. 14: "In such case, to successfully deny the jurisdiction of the court in summary proceedings for disbarment of a guilty officer, would practically strip it of the power of judicial self-defense, and make the bar, instead of an honorable and learned profession, a sort of fortress for the unprincipled, from which they would prey with impunity upon the public without, and attack the court from within. From the very nature of his office, and its relation to the public and the court, a lawyer, who enters at his own solicitation by the front door, subjects himself to ejection by the back one, if he does not 'behave himself well.' Nor is there any more reason for calling in a jury to pass upon his misconduct when he is put without the

bar, than for calling in one to pass upon his professional qualifications when he is admitted within it. The subject of investigation and judgment in both cases is one for which the court, and the court alone, is well qualified, while the jury is not."

What was said in Murphy's Est., 258 Pa. 38, in no way lessens the dominion of the court over members of the bar who are unworthy to be such. That part of the opinion relied on by appellant, wherein it is stated, "If there be a dispute as to the terms of an agreement as to the fees to be paid, the question becomes one of fact, and a man does not lose his right to a trial by jury because he is an attorney-at-law," must be read in connection with this language, used therein: "If from the pleadings it has appeared to the court below that the appellee had misbehaved himself in his office as an attorney practicing before it, or that the money which he retained was under its jurisdiction, it clearly could have punished the offending practitioner or required him to turn over the money in his hands to the estate to which they belonged."

In the instant case, there would be nothing for a jury to pass upon; for, whatever fees appellant might have been entitled to claim, had he acted according to proper standards of professional honor, he has forfeited by his fraudulent conduct and lack of fidelity to his client: Balsbaugh v. Frazer, 19 Pa. 95; Shoemaker v. Stiles, 102 Pa. 549; Martins's Petition, 237 Pa. 159. Appellant, having extracted from his client a large sum, under the allegation that it was necessary to be used in the procurement of bail, and having betrayed him in the habeas corpus proceedings, has forfeited any claim to compensation which he might otherwise have set up. If he was before a jury, answering a demand for the money he had received, and, in counterclaim, set up an indebtedness for fees, the court would be bound to rule, as matter of law, that such claim, under the circum-

stances of bad faith here appearing, could not be allowed.

The appeals from both proceedings are dismissed at appellant's cost.