## Osterling *v.* Rose, Appellant.

*Attorneys-at-law—Retention of client's money — Forfeiture of compensation—Check—Condition in check.*

1. An attorney-at-law who refuses or neglects to pay over his client's money on demand and thereby subjects the latter to added expense, forfeits his right of compensation for the services rendered in collecting the money in question.

2. Where an attorney-at-law sends a check to his client for moneys collected and writes in the body of the check that it is in full "less fees," the client may refuse it, inasmuch as it may prejudice his right to contest the amount retained by the attorney.

3. A check tendered in payment of an indebtedness, must be a "courier without luggage."

Argued March 19, 1926. Before MOSCHZISKER, C. J., FRAZER, WALLING, SIMPSON, KEPHART, SADLER and SCHAFFER, JJ.

Appeal, No. 138, March T., 1925, by defendant, from order of C. P. Allegheny Co., Jan. T., 1925, No. 1800, making absolute rule for judgment for want of a suf-

ficient affidavit of defense, in case of F. J. Osterling v. Percy Allen Rose. Affirmed.

Assumpsit for moneys retained by attorney-at-law.

Rule for judgment for want of sufficient affidavit of defense. Before MACFARLANE, J.

The opinion of the Supreme Court states the facts.

Rule absolute. Defendant appealed.

*Error assigned* was order, quoting record.

*O. K. Eaton,* with him *Rody P. & Meredith R. Marshall,* for appellant.—In remitting to the Colonial Trust Company, the use plaintiff below, checks of March 1, 1923, and May 15, 1923, appellant had a right to incorporate therein that they were a payment in full less amount he contended he was permitted to retain: Balsbaugh v. Frazer, 19 Pa. 95; Murphy's Est., 258 Pa. 38; Szok v. Crown, 33 Pa. Superior Ct. 612; Osbourn v. Carpet Co., 67 Pa. Superior Ct. 100.

In the absence of any dispute as to the amount collected or fees entitled to be charged, the acceptance by the Colonial Trust Company of either of the checks would not have amounted to accord and satisfaction: Bernstein v. Hirsch, 33 Pa. Superior Ct. 87; P., B. & W. R. R. v. Walker, 45 Pa. Superior Ct. 524; Millert v. Augustinian College, 36 Pa. Superior Ct. 511; Slocum Co. v. St. Clair, 52 Pa. Superior Ct. 98; Lovekin v. Fairbanks, 282 Pa. 100.

Even after the return by the use-plaintiff of the check of March 1, 1923, when the amount of the appellant's fee came into dispute, the acceptance by the use-plaintiff of the check of May 15, 1923, would not have amounted to an accord and satisfaction: Dimmick v. Cooper, 256 Pa. 295; Lovekin v. Fairbanks, 282 Pa. 100.

The ruling by Judge EVANS of Cambria County is not res judicata as to the right of appellee to recover the fees retained by appellant in the suit of the former in the

Common Pleas of Allegheny County: Landon v. Public Utilities Com., 234 Fed. 152, 165; Linton v. Safe Dep. & G. Co., 147 Fed. 824; Williams v. Row, 62 Pa. 118; Jackson v. Thomson, 215 Pa. 209; Lewis v. Baker, 151 Pa. 529; Dutton's Est., 208 Pa. 350; Packet Co. v. Sickles, 72 U. S. 580; Piro v. Shipley, 33 Pa. Superior Ct. 278.

*George E. Alter,* with him *Jos. F. Mayhugh,* for appellee.—Under the admitted facts, appellant wrongfully withheld his client's money.

We are not here for the decision of any nice question as to whether the acceptance of the appellant's check would have worked an accord and satisfaction. It is more than sufficient if the condition upon which appellant insisted might have subjected the client to any possibility or controversy on the question: Dimmick v. Banning, Cooper & Co., 256 Pa. 295.

Cases on the mere question of an attorney's right to deduct his fees are not relevant.

Appellant's wrongful conduct has been adjudicated: DeWitt v. Bank, 243 Pa. 534; Peoples Water Co. v. Pittston, 241 Pa. 208.

Appellant has clearly forfeited all compensation: Wills v. Kane, 2 Grant 60; Bredin v. Kingland, 4 Watts 420; Balsbaugh v. Frazer, 19 Pa. 95; Martin's Petition, 237 Pa. 159; Balogh v. Jackson, 272 Pa. 482.

Opinion by Mr. Justice Walling, May 3, 1926:

In 1913, the plaintiff, F. J. Osterling, of Pittsburgh, brought suit against Luzerne County to recover for his services as architect of the new courthouse in that county. The case was transferred to Lackawanna County, where the law firm of O'Brien & Kelly appeared for the plaintiff, but for some reason it was not promptly brought to trial and in 1920 Osterling employed the Pittsburgh law firm of Watson & Freeman to take charge of the case. The total amount claimed by plain-

tiff approximated $175,000, and he seems to have agreed
to pay the last-named attorneys a fee of $10,000 and
twelve and one-half per cent of the amount recovered,
paying in advance thereon $2,500. Near the end of
1922, plaintiff employed Percy Allen Rose, Esq., an
attorney at Johnstown and the defendant herein, to
supersede Watson & Freeman as counsel in the suit.
Rose visited Scranton and got the case on for trial be-
fore the court without a jury, but prior to its conclusion
a settlement was effected for $77,500, of which $7,000
was deposited with Judge MAXEY, of Scranton, to cover
the fees of O'Brien & Kelly and the balance, $70,500, was
paid to Rose as attorney for plaintiff. Prior thereto,
the claim had been assigned to the Colonial Trust Com-
pany of Pittsburgh, who in fact held it as trustee for
plaintiff. Rose received the $70,500 and deposited it in
his bank account at Johnstown on January 30, 1923.
At first plaintiff, it is alleged, requested Rose to pay him
the money, but later said to make the check to the Trust
Company, and, on March 1st next, it was so drawn for
$55,500, the check on its face stating, "In full amount
F. J. Osterling v. County of Luzerne less fees." Be-
cause of that condition, the check was returned to Rose
with a statement of the cause of its refusal; this made no
deduction for $6,500 which Watson & Freeman claimed
as balance of their fees and which under the terms of
settlement was included in the $70,500 check to Rose,
Osterling having disputed their claim and given Rose
an indemnity bond on account thereof. Later, on May
15, 1923, Rose sent another check of $49,000 to the Trust
Company deducting his own fee of $15,000 and the $6,-
500 for Watson & Freeman (the indemnity bond having
been returned to Osterling). This check had written
on its face: "In full settlement In re: The Colonial
Trust Company v. County of Luzerne, less fees and
amount to be retained by me [Rose] under paper of set-
tlement filed in above case." Osterling disputed the
right of Rose to $15,000 and the trust company's at-

torney requested him to withdraw the above-quoted writing on the check so that it might be accepted without prejudice, but the request was ignored. Meantime, on May 23, 1923, the claim was reassigned to Osterling, whose counsel, on June 23d next, wrote Rose calling attention to the fact that he still had the $70,500 and requested the prompt sending of a check without conditions. This letter was received at Rose's office, but ignored, and, on July 5th next, plaintiff presented a petition to the Court of Common Pleas of Cambria County and a rule was obtained under the Act of June 16, 1836, P. L. 793, requiring Rose to show cause why he should not pay over the amount in his hands. To this an answer was filed and depositions taken and after a contest lasting nine months, that court filed an opinion and ordered Rose to pay Osterling the $49,000, with interest thereon from March 1, 1923, and to pay the $6,500 tc Watson & Freeman, who had intervened. The order was made without prejudice to Osterling's right to recover the $15,000. No appeal was taken therefrom and, on May 9th next, the $49,000 and interest was paid accordingly. Thus, what should have been paid promptly was delayed fifteen months without excuse and then paid pursuant to an order of the court and after plaintiff had been compelled to employ counsel and incur much expense and trouble. Thereupon plaintiff brought this suit for the $15,000, contending that by neglecting and refusing to pay over the money admittedly due the client, the defendant had forfeited his right to compensation for the services rendered. The trial court sustained this contention and, there being no dispute as to the controlling facts, entered judgment for plaintiff for want of a sufficient affidavit of defense; therefrom defendant has appealed.

The judgment was properly entered and the record presents no doubtful question of law or fact. An attorney who refuses or neglects to pay over his client's money on demand and thereby subjects the latter to

added expense, forfeits his right to compensation for the services rendered in collecting the money in question. The opinion by Mr. Justice POTTER, for the court, in Martin's Petition, 237 Pa. 159, 161, states the rule that: "Anything which savors of lack of good faith upon the part of an attorney, such as the receipt of money without giving notice to the client within a reasonable time, or the refusal or neglect to pay over promptly upon demand, calls for forfeiture of all claim to compensation." In Large v. Coyle, 9 Sadler 206, the principle, as stated by Judge STOWE, and affirmed by this court, is summarized as follows: "Where an attorney-at-law, who has made a special contract with his client for fees for collecting a claim, has refused or neglected to pay over the money collected, has been unreasonable in his conduct, subjecting his client to annoyance and expense, and compelled him to bring suit for the recovery of the money, he forfeits his fees and is bound to pay over the moneys received, without reference to his fees at all." To the same import are Wills v. Kane, 2 Grant 59; Bredin v. Kingland, 4 Watts 420; 3 Am. & Eng. Enc. of Law (2 ed.) p. 444; 6 C. J. 723; see also Balogh v. Jackson, 272 Pa. 482. Murphy's Est., 258 Pa. 38, does not help the defendant, for there the attorney had paid over to the client all except that retained as fees, the amount of which, we held should be settled by jury trial.

The $49,000 admittedly was plaintiff's money to which he was entitled without accepting a check written in full so as to prejudice his right to contest the amount of fee retained by the attorney. It is not a question whether the acceptance of the check so written would preclude such contest; that it would damage plaintiff's case at the trial is sufficient. The contention that it would not amount to an accord and satisfaction, while probably sound, is an afterthought, otherwise defendant would not have insisted on giving that form of a check and even asserting his right to do so in the affidavit of defense.

A check tendered in payment of an indebtedness, to be effective, must be like the old rule as to a negotiable note, "a courier without luggage."

The Cambria County court's order requiring Rose to pay interest on the $49,000 was necessarily based on a wrongful withholding (see DeWitt v. Keystone Nat. Bank, 243 Pa. 534; 33 C. J. 202); we need not, however, treat that here as res judicata, for the pleadings in this case lead to a like conclusion. Paragraph 13 of plaintiff's statement sets out the reassignment of the claim to Osterling on May 23, 1923, the prompt notice thereof to defendant and counsel's request of him to release the $49,000 check from the receipt in full written thereon, so as not to prejudice plaintiff's right to question the amount of the $15,000 fee retained and that the check was returned to Rose because of failure to secure such release, etc. As to this paragraph the affidavit of defense says: "That the defendant admits the averments contained in paragraph '13' of the plaintiff's statement, and avers that his reasons for refusing to release the said Colonial Trust Company from the receipt in full written upon the face of the said check of May 15, 1923, was that he intended that the same should be in full and that the amount of said check was actually in full of the amount due the said Colonial Trust Company." The doubtful character of plaintiff's claim against Luzerne County and the advantageous settlement secured, averred in the affidavit of defense, are beside the question. Defendant admittedly had the $49,000 belonging to his client and his failure to turn it over for fifteen months, although repeatedly demanded, being without any legal excuse, was such professional misconduct as to deprive him of compensation for services in securing the fund in question, and the trial court properly so held. Rose's repeated attempts to force the client, in order to secure his own money, to give such an acquittance as might forestall the question of the justness of the $15,000 fee,

or at least prejudice plaintiff in reference thereto, made that court's duty more imperative.

The judgment is affirmed.

DISSENTING OPINION BY MR. JUSTICE KEPHART:

I do not agree that a summary judgment should be entered against appellant. This is one of those doubtful cases which requires some enlightenment on the facts.

Plaintiff sued to recover a sum of money collected by defendant, an attorney-at-law, and averred in his statement that the sum retained should not be considered as fees because of the conduct of defendant in unduly delaying the payment of the money. The affidavit of defense denies that payment was unduly delayed, denies that plaintiff is entitled to recover the sum of money, sets up in some detail the legal services rendered, and narrates reasons why there was delay in the payment of the money. The court below seemed to be of opinion, in disposing of the rule for judgment, that the rule taken out in Cambria County, to direct defendant to pay to plaintiff all the money, rendered this decision res adjudicata as to all matters. The opinion of the majority of this court does not base its order on a former adjudication of the question involved, but on the pleadings.

I find nothing in the pleadings quoted that would warrant a summary judgment. When the claim was assigned to the Colonial Trust Company, and a check sent by defendant, it stated, exactly what was then the correct state of affairs, that it was in full settlement of the matter of the Colonial Trust Company v. Luzerne County, less fees, and amount retained by defendant under a paper of settlement. The check accounted for all the money in defendant's hands and gave the reason for withholding the balance. Similar notations on checks by attorneys are not only frequent but the customary practice, even with counsel for appellee. It did not attempt to adjudicate the question of fees, nor was it

binding on the trust company as to any question that might be raised concerning fees: Szok v. Crown, 33 Pa. Superior Ct. 612; Osbourn v. Magee Carpet Co., 67 Pa. Superior Ct. 100. Nor was it even evidence that the trust company conceded the sum retained was due as fees.

The litigation by which the money was collected was first instituted by Watson & Freeman. Then defendant and three other law firms appeared as counsel at different times, in some way representing plaintiff, including the present counsel. This circumstance might cause "any lawyer with normal professional standards" to be cautious. When the matter was in the hands of the Colonial Trust Company, which was for almost a year, as appears from the pleadings, plaintiff attempted to surreptitiously secure a settlement direct with defendant; thus plaintiff was in some way trying to circumvent his assignment of the claim to the Colonial Trust Company. These circumstances are of little weight in determining defendant's good faith, but, added to what is above suggested, should cause one to be extremely cautious. When the matter was heard by Judge EVANS of Cambria County, on the rule to pay over, these same incidents must have played some part, as every phase of the difficulty was necessarily gone into. Judge EVANS, in making the order directing the payment of $49,000 not only did not allow interest on the balance of the money but directed the question as to the fees involved to be afterwards litigated, as appears by the order: "Without prejudice to the right of F. J. Osterling to recover the balance of $15,000 from the said Percy Allen Rose and the $6,500 directed to be paid to Watson & Freeman in any proper actions at law......" If plaintiff was not satisfied with that order, he could have appealed, and the question now presented with the evidence there submitted could have been considered with more justice. The mere fact that there was delay in payment of the money ought not of itself to condemn defendant. He should be given an opportunity to ex-

plain why that delay occurred, apart from the one reason related: Walton v. Dickerson, 7 Pa. 376.

This cause shows bad faith on part of plaintiff and the order of the Court of Common Pleas of Cambria County did not adjudge his present claim as without fault. The same court was of opinion that,—while plaintiff was unduly deprived of his money for a certain time by defendant, and, as a member of the bar, the latter must be held to strict accountability in the collection and turning over of money to his clients,—he should pay interest on that sum, but, as to the balance of the money collected, other circumstances warranted a different course. This is the claim now before the court.

The rule as to payment of the money by attorneys cited in the majority opinion "can be applied only where the attorney withholds in bad faith or without legal reason the moneys collected, and the validity of his reason *is for the court and jury to determine upon the law and facts of the case.* It follows that, where, in a suit against an attorney to recover money collected, it appears the attorney retained the money as fees due him, the client can recover only to the extent of the surplus after deducting the fees": 6 C. J. 723. The mere fact that he is an attorney-at-law does not deprive him of his legal rights as a citizen in defense of litigation: Rule on R. P. Kennedy, 120 Pa. 497; Murphy's Est., 258 Pa. 38, 44. From the statement in this record there is not the slightest doubt plaintiff's claim against the County of Luzerne was very doubtful. The one chiefly responsible for procuring the sum of money here claimed, is denied payment for his services for reasons which at this time seem entirely inadequate. Until all the evidence is brought on the record, as it was in the case in Cambria County, and defendant given a chance to be heard, final action should not be taken. As I view the matter, neither the state of the pleadings, nor the supposed importance of the case, justifies depriving him of this substantial right.

I would reverse the order and direct a trial of the case.