24836. FELTON *v.* SMITH *et al.*

DECIDED JANUARY 27, 1936.

*Jule Felton, Jule W. Felton,* for plaintiff.

*Park & Strozier,* for defendants.

JENKINS, P. J. The original petition was brought against two defendants, composing a law partnership. As twice amended without objection, it alleged that the petitioner had employed the attorneys to represent him in collecting moneys in connection with litigation in the superior court, where the petition was filed and the defendants resided, and in the courts of Delaware; that they had collected in Delaware $153,732.07; that they paid to petitioner $109,122.12; that petitioner "obligated to pay said attorneys the sum of $37,000 attorney's fees for themselves and associates, and the said attorneys retained in their hands and declined upon written demand to pay to petitioner the balance due to him, viz. $33,204.44;" that petitioner "had previously paid on account, to be credited on said obligation of said $37,000 the sum of $25,500 before their collection of the above sums, so that at the time of the collection by respondents of said sums due them by plaintiff, under said obligation to pay them the sum of $37,000, the balance of $11,500;" that "said attorneys came into possession of said money as attorneys for petitioner; that it belongs to him; that they have violated their trust in said relationship; that they declined and have declined upon personal and written demand to repay the same." To this petition the defendants filed general and special demurrers, which, so far as not met by the amend-

ments allowed without objection, are: that under the facts alleged, petitioner was not entitled to a rule, and the petition stated no cause of action; that the terms of the contract of employment were not set out; that the nature of the claim to be collected and of the litigation was not described; that it was not stated whether the moneys were collected as the result of litigation or how otherwise, where the litigation was had, whether the defendants collected the same alone or associated with others, nor when and how the money was paid to respondents; that it was not alleged when or how "petitioner obligated to pay the said attorneys" the amount alleged "as attorneys' fees for themselves and associates," or whether the obligation was in writing; that it was not alleged who the associates of respondents were, how they were employed, and what amount the defendants and the associates respectively were to receive; that it was not alleged how the defendants violated their trust; and that it was not alleged when the demand to repay was given, the amount demanded, or what particular moneys were demanded. The petitioner offered an additional amendment, which was disallowed on the objection that "it introduced a new contract, a new cause of action, and was inconsistent with the original petition." This amendment, after describing the nature of the threatened litigation, and that the defendants were employed soon after January 1, 1929, alleged that petitioner told the defendants "that he desired to engage them to represent him as to all litigation which might arise in the premises, and wanted to have with them a specific agreement as to their fees in advance before the performance of any service, so as not to have any misunderstanding;" that the defendants "replied that it was impossible to tell what service was to be performed and they wanted to do it for him, and that they would leave all compensation to be fixed by him, the plaintiff; that they knew he would treat them fairly;" that "when it was necessary to employ associate counsel in Delaware, the firm [stated in the amendment] was selected; plaintiff insisted in the presence of respondents that the attorneys' fees to be charged him must be fixed, and said associates said in substance that the services to be required were uncertain, and they would perform the same, and leave the matter of compensation to [one of the two members of the defendant partnership], and the said [member] advised the plaintiff that the fee he would fix for

said associates would not be in excess of $12,000;" that "between July 1, 1929 and April 22, 1931, plaintiff paid to respondents fifteen payments as requested by them aggregating $18,000, and to Delaware associates $7,500;" that the defendants "on July 13, 1931 rendered to plaintiff a bill in which they specified all legal services which they rendered plaintiff, and said items of service are copied and attached, and marked 'Exhibit A,' paragraph 12, 23, and 25 thereof [reciting] alleged service in which Delaware associates assisted." The details of litigation in Delaware and in Bibb superior court were set forth. It was then alleged that, under a written stipulation in each of the cases in Georgia and Delaware, it was agreed that the defendants in those cases should specially deposit in Delaware $103,090.44 and other moneys and $49,695.36 net, "to be paid to plaintiff, if he prevailed in said suits, which he did;" that "on October 5, 1931, the proper court passed an order that said sums be paid to plaintiff;" that "in the meantime when there was a prospect of said money being released and relieved from pound, the respondents sent him a bill for their own services totalling $35,000; this charge was unfair and excessive, and plaintiff declined to pay same;" that "on August 12, 1931, plaintiff sent his present counsel to see respondents, and gave him full authority to agree on and fix with respondents their personal fees and fees of associates, and they, the respondents, then and there agreed with him on the sum of a total of $25,000 to respondents, of which $18,000 had been previously paid, and the sum of $1,000 was mailed to respondents same afternoon, which they received and [was] retained by them till August 14, on which date said check was returned; and on said date plaintiff's said attorney gave to [the defendant who it is alleged had agreed to fix the fee of associated attorneys at not over $12,000] express direction to fix the fee of Delaware associates at the figure he had agreed, not in excess of a total of $12,000, of which $7,500 had been paid;" that petitioner "had the right under his original contract with respondents to fix said fee, if he acts in good faith, and he does fix and has fixed same as at $25,000 for and in behalf of respondents, and if he does not have the contract right to fix it, and that agreement is repudiated by respondents, said sum is far in excess of a reasonable fee for the services of respondents." It was then alleged that "the fees of the respondents, in addition,

were fixed and agreed to before the reception of the money aforesaid, with, by, and through his attorney on August 12, 1931, in agreement with respondents at $25,000, of which $18,000 had been previously paid, and leaving a balance of $7,000." As to the fees of associates, it was stated: "that the plaintiff was induced to associate counsel in Delaware without insisting on fixed contract by the agreement of respondents to fix the same at not more than $12,000;" that "the said overcharge was made in bad faith, without right, and was fraudulent, excessive to a point of being unconscionable, and the fixation of the fees of said Delaware associates over $12,000 as agreed and stated by [the defendant named] was a part of a fraudulent compact to overcharge and oppress plaintiff;" that "respondents collected and received as his attorneys from [a named] sequestrator of court $49,695.36 and from [a named Delaware depositary] the net sum of $104,036.71;" that "they paid plaintiff $109,027.63;" that petitioner had previously paid respondents $18,000 and owed them a balance of $7,000, had paid Delaware counsel $7,500 and owed them a balance of $4,500, total of $11,500.

It thus appears from the petition as amended and sought to be amended that the defendants collected $49,695.36 and $104,036.71, a total of $153,732.07; that the amount of the fee to the defendants themselves was finally fixed and agreed on with the petitioner through his representative at $25,000; that the maximum amount of fees for associated attorneys was $12,000, a total of fees as credited to the defendants by the petition amounting to $37,000; that petitioner, prior to the collection, had paid on these fees from has own funds $18,000 to the defendants on their personal fees, leaving a balance of $7,000 due to them from their collection, and $7,500 to associate attorneys, leaving a balance for those attorneys, properly payable from the collection, of $4,500, allowing the full maximum amount which it is alleged was limited under agreement with the defendants, making a total of $11,500 in unpaid fees deductible from the collected funds; that the defendants had actually paid to the petitioner $109,027.63, thus leaving an unpaid balance due to him of $44,704.44 less the $11,500 of unpaid fees. It was alleged that the defendants "retained after deduction of all fees due or contracted for the sum of $33,204.44, which has been demanded of them and of which payment has been refused."

After the offer and rejection of the last amendment, the court entered the following order: "Respondents having demurred to the petition in the above stated case, and plaintiff having amended his petition for rule, and the demurrer having been renewed to the petition as amended, after argument thereon, plaintiff having filed no further amendment after having been allowed until March 16 to file any further amendment, said demurrers are sustained to the petition as amended. It is ordered that the rule be discharged, and that the petition be dismissed." The petitioner excepts to the disallowance of his last amendment and to this judgment.

1. Under the general rule as well as that obtaining in this State, the summary remedy to enforce the payment of money belonging to a client, wrongfully withheld by his attorney, is penal in its nature (*Haygood* v. *Haden,* 119 *Ga.* 463, 46 S. E. 625); and such a proceeding is not intended to be employed where, under all the proper pleadings, the question at issue is not the dereliction of the attorney in wrongfully withholding the funds of his client, but is the proper construction of an ambiguous contract. In other words, such a rule will lie only where an attorney either seeks, in opposition to the explicit terms of his agreement, knowingly and fraudulently to withhold a sum not authorized thereby, or in withholding such funds acts in ignorance or misapprehension of facts which his duty to his client obligates him to know. *West* v. *Hill,* 23 *Ga. App.* 636 (99 S. E. 155). See also *Hawkins* v. *Smith,* 56 *Ga.* 571, 576.

2. While according to uniform authority courts will on any prima facie showing issue a summary rúle against an attorney, where it is made to appear that he is wrongfully withholding moneys indisputably belonging to a client, it is nevertheless the rule at common law that the courts will refuse to continue to lend themselves to such a procedure, where it subsequently develops that the purpose is not to adjudicate such manifest dereliction of the attorney, but to determine disputed rights and credits, so as to render the proceeding equivalent to an action of debt or assumpsit. Under the rule at common law, if such be the purpose of the proceeding, and if by the petition no professional misconduct be indisputably shown to exist, it will be summarily dismissed; and under such rule, even where a dereliction is charged, the attorney is permitted to purge and exculpate himself by stating controvert-

ing facts in his sworn answer, with the result that the client is thereupon remanded to his ordinary remedies at law. As was said by Blackstone, "if he clear himself by his answer, the complaint is totally dismissed." 4 Com. 288. See also Texas *v.* White, 10 Wall. 483 (19 L. ed. 992); Burns *v.* Allen, 15 R. I. 32 (23 Atl. 35; 2 Am. St. R. 844); Windsor *v.* Brown, 15 R. I. 182 (9 Atl. 135; 2 Am. St. R. 892); Pierce *v.* Palmer, 31 R. I. 432 (77 Atl. 201, Ann. Cas. 1912B, 181); Mundy *v.* Strong (N. J.), 31 Atl. 611; Gross *v.* Vogel, 196 App. Div. 358 (187 N. Y. Supp. 660); In re Kennedy, 120 Pa. 497 (6 Am. St. R. 724); 2 R. C. L. 1026-1029, §§ 108, 110; 6 C. J. 711, 712, § 264; Note in 22 A. L. R. 1505-1515, and cit. Under the provisions of the Georgia statutes, however, on a rule nisi being granted on a sufficient prima facie showing, the attorney is required to respond in writing under oath, and it is only where such answer is not denied that the rule will be discharged or made absolute according as the court may deem the answer sufficient or not, the statute further providing that if the truth of such answer be traversed by the client the issue thus made shall be tried by a jury. Code of 1933, §§ 24-209, 24-210, 9-617. In the instant case, the averments of the original petition, which for the purpose of demurrer must be taken as true precisely as alleged, and as construed with the proffered amendment, charged the collection by the attorneys of a definite stated sum for the petitioner; that the fee of the attorneys themselves had been fixed at a definite stated amount by an agreement between them and the petitioner, acting through his authorized representative; that one of the defendant attorneys had previously agreed with the petitioner to fix and limit the fees of their associate attorneys at an amount not in excess of a definite stated amount; and that the defendant attorneys retained in their hands and refused on demand to pay over to the petitioner the difference between the stated amount collected and the stated amounts thus properly deductible therefrom. Under these allegations, the petition was not subject to the general demurrer, as showing on its face a mere controversy over the proper amount of fees deductible from the collection or over disputed rights and credits, so as to require a remand of the petitioner to his ordinary remedies at law for the determination of his alleged rights.

3. The original petition for a rule nisi alleged that the defendants had collected as attorneys for the petitioner a stated amount; and that, after allowing a named "obligated" fee, covering their own services and those of their associate attorneys, they retained and wrongfully withheld after a demand a stated remaining amount. By a proffered amendment, to the disallowance of which exception is taken, it was alleged, first, that it was agreed that the amount of the fee to the attorneys themselves would be such amount as should be fixed by the client, with the understanding by the attorneys that he "would treat them fairly;" and that the amount of the fee to other attorneys associated by the defendants would be fixed by one of the defendant attorneys in an amount not to exceed a stated sum. It was further alleged in the rejected amendment that prior to the collection of the moneys by the defendant attorneys, the petitioner, through his representative acting on his authority, entered into an agreement with them that the total fees going to themselves should be a stated sum. This amendment was not subject to the objections made, that "it introduced a new contract, a new cause of action, and was inconsistent with the original petition." This is true for the reason that the amendment in effect merely elaborated and disclosed how the petitioners, as originally alleged, "obligated to pay said attorneys" the stated amount as "attorneys' fees for themselves and associates." If the proffered amendment had sought to invoke a rule merely upon the allegation that the petitioner had reserved the right to fix and determine the reasonable amount of the fee, without the additional allegation that he had, by subsequent mutual agreement with the defendants, actually fixed the amount at the sum stated, the disallowance of the amendment would have been proper. This would follow because the first averment, if standing alone, would have sought to introduce a new contract contrary to the one originally declared on, and would have sought to add a new and different cause of action. (*Lamar* v. *Lamar, Taylor & Riley Drug Co.*, 118 *Ga.* 850 45 S. E. 671; *Alabama Construction Co.* v. *Continental Car Co.*, 131 *Ga.* 365, 62 S. E. 160; *Pittman* v. *Hodges*, 13 *Ga. App.* 25, 78 S. E. 688; *Cook* v. *Pollard*, 50 *Ga. App.* 752, 759, 179 S. E. 264); and further because any averment going merely to indicate an unliquidated agreement as to the reasonable amount of the fee would have required the court to liquidate and settle

the amount thereof. Heller *v.* Kalish, 123 N. Y. Supp. 1057. This, as already stated, is not within the scope and purpose of the summary remedy adopted.

4. The amendment was not subject to objection because it alleged that only one of the two defendants, who composed a law partnership, agreed to fix the fee of their associates at an amount not in excess of a stated sum, with the result that the other member of the partnership would not be bound thereby in a rule proceeding. The allegation being clearly to the effect that the member of the partnership was acting for the partnership and within the scope of its business in making the alleged agreement, the partnership would be bound thereby, and upon a failure of the members to pay over any funds held by the partnership in contravention of such agreement, they would be subject to a money rule. Moreover, the amendment further refers to "the agreement of *respondents* to fix" such fee of associate counsel at not more than the amount stated, and also states that the discussion and statements with regard to such fee were "in the presence of *respondents*." From these additional averments it appears that the other member of the defendant partnership would be bound, not only because the undertaking of his partner was within the scope of the partnership business, but for the additional reason that it appears that by his presence he participated in the alleged agreement and understanding.

5. According to the allegations of the petition, the moneys in question being now held in the State and county of the suit, and part of the litigation incident to their collection having been prosecuted in the superior court of that county, in which county the defendants resided, the petition was not subject to demurrer, on the ground that the court was without jurisdiction to entertain the proceeding because the moneys collected were actually paid over in Delaware, where most of the prolonged litigation was had. See *Phillips & Crew Co.* v. *Jones,* 139 *Ga.* 160, 163-165 (76 S. E. 1019), in effect overruling *Wilkinson County* v. *Lindsey,* 106 *Ga.* 25 (31 S. E. 792.)

6. The petition with the amendments which were allowed without objection, and the proffered amendment which was erroneously disallowed, sufficiently met all proper grounds of the special demurrers. Under the preceding rulings, the court erred in dis-

missing the petition on the general and special demurrers, and in rejecting the amendment, which should be allowed subject to the right of the defendants to file such special demurrers as they may desire and as may be proper, before answering the petition in accordance with the statutory procedure.

*Judgment reversed. Stephens and Sutton, JJ., concur.*