# OCTOBER TERM, 1955.*

## MERRILL *v.* GRANT.

1. ATTORNEY AND CLIENT—RECOVERY OF MONEY—JURY TRIAL.
   The proceeding by a client against an attorney to recover funds belonging to the client is summary and need not be referred to a jury to determine the facts (Court Rule No 4 [1945]).

2. SAME—ADVERSE USE OF INFORMATION ACQUIRED FOR CLIENT.
   Attorney who first represented real-estate agents who sought recovery from builder of $2,100 deposit which had been made by prospective purchasers, which deposit the builder converted, and attorney thereafter performed services for the builder and took a deed of property held by the builder and his wife as tenants by the entireties and later received $2,085.50 for services rendered builder from proceeds of sale, *held,* liable in summary proceeding by real-estate agents for amount received, where it appears defendant had represented the agents for purpose of procuring return of deposit and was not entitled to use knowledge so acquired in a manner to defeat his former clients (Court Rule No 4 [1945]).

3. COSTS—REDUCED JUDGMENT—INTEREST.
   Costs are allowed appellees upon affirmance of judgment in their favor, although reduced by a sum less than the accrued interest on the remainder.

Appeal from Wayne; Maher (Thomas F.), J. Submitted October 5, 1955. (Docket No. 18, Calendar No. 46,473.) Decided December 1, 1955.

* Continued from Volume 343 Michigan.

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur, Attorneys at Law § 143 *et seq.*
[1] Right of attorney to jury trial where he is charged with failure to turn over money or property to client. 22 ALR 1501.
[2] 5 Am Jur, Attorneys at Law §§ 48, 143 *et seq.*
[3] 14 Am Jur, Costs § 92.

Charles J. Merrill and Paul Threm, copartners, doing business as Merrill-Threm Company, filed petition against Donald W. Grant, attorney, to impress trust upon moneys received by him and for other relief. Judgment for plaintiffs. Defendant appeals. Affirmed.

*John C. La Fata,* for plaintiffs.

*Donald W. Grant, in propria persona.*

REID, J. Defendant Donald W. Grant, an attorney, takes this appeal from a judgment of circuit court in a summary proceeding against defendant under Michigan Court Rule No 4 (1945). Plaintiffs on February 25, 1954, filed their petition for such proceeding; an order to show cause was issued on the same day. Defendant's answer was filed March 5th following.

During June, 1952, plaintiffs sold 2 houses under construction by one DiPalma, a builder. Plaintiffs accepted deposits on these sales and were prevailed upon to turn the total of $3,600 over to DiPalma, who pleaded necessity but converted the money. The purchasers demanded refunds from plaintiffs. Plaintiffs' broker's license was revoked by the Michigan corporation and securities commission on complaint of Yapur, 1 of the purchasers. The plaintiffs were required by the commission to make a refund of $2,100 to Yapur, the other deposit being settled by DiPalma some time later. Plaintiffs throughout this period were represented by defendant as their attorney, and plaintiffs had referred DiPalma to defendant in an effort to assist DiPalma with his many legal problems.

Plaintiffs on February 3, 1953, purchased a cashier's check (exhibit No 5) payable to Yapur for the refund of $2,100, and placed the check in the

hands of defendant Grant who in turn delivered it to Yapur on February 9, 1953. With the delivery of this check, defendant secured the release of Yapur as against DiPalma. The release recited that the money was being paid by plaintiffs. On behalf of plaintiffs, defendant obtained from DiPalma an assignment (exhibit No 7) of certain real estate, dated February 10, 1953, to secure repayment of $2,100 to plaintiffs. Defendant on October 22, 1953, took title by warranty deed (exhibit No 10) from the DiPalmas on the same property mentioned in the assignment of interest in real estate owned jointly by DiPalmas but the assignment was not signed by Mrs. DiPalma. This deed was not recorded until the property was sold to one Altese and wife on February 4, 1954, when defendant and his wife deeded to them. Defendant being the grantor, the net proceeds, after payment to various contractors, was delivered and paid to defendant and his wife, the amount being $2,085.50. Plaintiffs claim that defendant had not informed plaintiffs that he held title to the property nor did he inform plaintiffs when the property was sold and a mortgage obtained to facilitate the transaction. In any event, plaintiffs discovered the sale a few days after it occurred and, by registered mail through their attorney, demanded the sum of $2,085.50 to reimburse the plaintiffs for money advanced. Defendant refused to pay the $2,085.50 on the ground that DiPalma was indebted to him for attorney services rendered and being rendered. Plaintiffs in the same demand requested various papers, files, et cetera, that defendant had but which belonged to plaintiff. Defendant ignored the demand and later plaintiffs began the instant proceeding.

On April 7, 1954, plaintiffs' motion for judgment came on for hearing. A colloquy took place between

court and counsel, defendant appearing before the court in person, at the conclusion of which the court announced that briefs would be filed and decision would then be made. The court, evidently considering that the defendant had made statements and admissions as to sufficient material facts on which to base a judgment, denied the request of defendant for a full hearing.

As to the procedure in cases of this sort, see 22 ALR 1497–1508 and cases there cited. As to jury trial, the instant case is governed by our Court Rule No 4 (1945) which rule is as follows:

"Attorneys and counselors are officers of the courts of this State and as such are subject to the summary jurisdiction of such courts. The circuit court of the county in which an attorney resides or has an office has jurisdiction, on verified written complaint of any client, either in person or by attorney and after reasonable notice and hearing, to make any order for the payment of money or for the performance of any act by the attorney which law and justice may require. All courts of record have a like jurisdiction as to all such complaints regarding matters arising in suits or proceedings in such courts."

The proceeding before the circuit judge is summary and need not be referred to a jury to determine the facts.

Defendant claims that after February 10, 1953, the date of the execution of exhibit No 7, hereinafter set forth, he at no time represented plaintiffs, which is conceded by plaintiffs.

In their petition and claim filed herein, plaintiffs, among other things, allege in paragraph 7, subparagraph j, as follows:

"That on March 25, 1953, the said attorney Donald W. Grant, did forward his invoice to the petitioners herein, for legal services rendered in connection with

the said matter between them, the petitioners and Anthony and Carmen Yapur and which statement among other things, itemizes the services rendered to include 'arrangement and preparation of security for repayment of money advanced by you, arrangement and preparation of withdrawal by complainants of complaint, procurement and preparation of assignment by Mr. and Mrs. DiPalma' and which assignment by Bennie DiPalma and Lillian DiPalma, said attorney continues to hold and has refused and neglected to deliver to said petitioners as heretofore demanded."

Defendant in his answer to such allegation of plaintiff says:

"Answering paragraph 7, subparagraph j, respondent admits that he sent an invoice to petitioners for services rendered but denies that he is in possession of any assignment signed by the persons alleged therein."

In his brief in this Court, defendant, among other things, states:

"Plaintiffs' claim to the money in question is based upon exhibit No 7 which is an incomplete assignment [*i.e.,* lacking Mrs. DiPalma's signature]. As a result of the hearing before the Michigan corporation & securities commission in February, 1953, on the complaint of the Yapurs against plaintiffs, the latter were required to return the $2,100 deposit to the Yapurs. The return of this money was accomplished through defendant. Plaintiffs delivered a check in this amount to defendant payable to the Yapurs and defendant in turn delivered it to the Yapurs on February 9, 1953, and on the same date the Yapurs executed exhibit No 6 absolving DiPalma from further liability to them. On the following day exhibit No 7 was delivered to DiPalma for execution by he and his wife. This exhibit is an assignment prepared by defendant by which DiPalma and his wife were to assign to plaintiffs $2,100 of the

proceeds of the Altese sale derived from Detroit & Northern Savings and Loan Association. This assignment was signed by DiPalma on February 10, 1953 and delivered to him and is, for all purposes, the same as exhibit No 3 previously prepared by plaintiffs. It was expected that DiPalma's wife would also sign it but for reason best known to herself, and as claimed by defendant, also known to plaintiffs, she declined to do so. It should here be noted that this assignment (exhibit No 7) is, by its terms, expressly limited, as was exhibit No 3, to any disbursement made by Detroit & Northern Savings and Loan Association.

"It is the claim of defendant that after February 10, 1953 (the date of the execution of exhibit No 7) he, at no time thereafter represented plaintiffs, which fact is not seriously disputed by plaintiffs. Some time after February 10, 1953 but prior to October 22, 1953, Detroit & Northern Savings and Loan Association declined to proceed with the financing of the sale and it became necessary for the purchasers (Altese) to obtain assistance elsewhere which they ultimately did from a wholly separate lending institution known as Standard Federal Savings and Loan Association. On October 22, 1953 and after Detroit & Northern Savings and Loan Association had refused to proceed further, the property being sold to the Alteses was deeded to defendant, among other reasons, as security for moneys owed to him, and thereafter, and on or about February 7, 1954 the sale was finally consummated with the Alteses through Standard Federal Savings and Loan Association. Defendant insists he represented DiPalmas as their attorney at that closing and the money was disbursed to him and his wife, they having executed the deed to the Alteses for Mr. and Mrs. DiPalma. The fact that defendant was acting for DiPalma on February 7, 1954 rather than plaintiffs when the sale to the Alteses was consummated was pointed out to the trial court in the colloquy and this fact was not disputed by plaintiffs,

but, on the contrary, is conceded by plaintiffs. It was further pointed out to the court in the colloquy that, in view of the fact that defendant was not acting for plaintiffs as their attorney when he received the money here involved but rather was acting for the DiPalmas, the plaintiffs could not invoke the summary proceedings provided by Rule No 4.

"As pointed out in the 'preliminary statement,' *supra,* no witnesses were sworn and no opportunity for cross-examination afforded although demanded by defendant before judgment. Therefore, if any dispute is presented in this appeal as to the above facts, it may fairly be said to be attributable directly to that fact. After judgment and on June 24, 1954, on motion of plaintiffs, costs were taxed against defendant in the amount of $66.52. Notice of hearing of the motion was given defendant on June 21, 1954, less than the full 4 days provided by Rule No 10, § 2, Michigan Court Rules (1945)."

In regard to exhibit No 7, plaintiffs argue as follows in their brief:

"The basic document, the assignment (exhibit No 7), pleaded for in  *  *  *  [the petition] and demanded by registered mail to defendant on February 16, 1954, was not produced until April 7, 1954, on the hearing of the order to show cause. When produced it indicated the correct date of February 10, 1953, but bore the sole signature of Bennie DiPalma and was unsigned by Lillian DiPalma, his wife.

"The absence of the signature of Lillian DiPalma, together with the delay in producing this document which plaintiff[s] had never seen, but was advised in defendant's invoice (exhibit No 9) existed, coupled with the fact that defendant was counsel for DiPalma during this period, raised the possibility that it was of recent origin which was commented upon by plaintiff[s] on page 31 of the record.

"The absence of Lillian DiPalma's signature contradicts the statement for services rendered by the

defendant to the plaintiff[s] on March 25, 1953 (exhibit No 7) wherein the assignment is described as being procured from 'Mr. and Mrs. DiPalma.'

"The absence of the signature of Lillian DiPalma on the assignment is further inconsistent as Lillian DiPalma signed readily enough, the following documents, transmitted, among others, to this Court by order of the trial court as follows:

"(a). Offer to purchase—exhibit No 1.

"(b). Escrow agreement—exhibit No 4.

"(c). Warranty deed—exhibit No 10."

Said exhibit No 7, as printed in the record, is as follows:

### "ASSIGNMENT

"For a valuable consideration, the receipt of which is hereby acknowledged, the undersigned Bennie DiPalma and Lillian DiPalma, his wife, hereby assign and set over unto Charles J. Merrill and Paul E. Threm, copartners doing business under the name and style of Merrill-Threm Company, all their right, title and interest in and to the proceeds to be derived from the sale of premises more commonly known as 19159 Alstead street in the city of Detroit, Michigan, and which sale is to be financed by Detroit & Northern Savings and Loan Association by way of mortgage.

"This assignment is expressly limited to a disbursement, if any, to be made by Detroit & Northern Savings and Loan Association and is further limited in the amount of $2,100. Any sums remaining to be disbursed by Detroit & Northern Savings and Loan Association over and above the said $2,100 shall remain the property of the assignors.

"In witness whereof we have hereunto set our hands this 10th day of February, 1953.

"(s) BENNIE DIPALMA
"Bennie DiPalma

"Lillian DiPalma"

We assume that the name, Lillian DiPalma, had been typewritten but was not signed by her.

During the summary trial, and in the colloquy between court and counsel, the following occurred:

"*Mr. Grant:* The property on Alstead, if the court please, was entireties property owned by Mr. and Mrs. DiPalma, husband and wife. One document that has not been mentioned here that is of prime significance. After payment of the money by Merrill-Threm Company to DiPalma—that is the money the broker received from the customers and turned over to the builder, the petitioners here of their own volition without any intercession on my part at all prepared an assignment and had Mr. DiPalma alone execute it. This particular piece of property on Alstead was to be sold to people by the name of Altese. That sale was being financed by Detroit & Northern Savings and Loan Association. It was expected the deal was to be closed at their office. In contemplation of that Merrill-Threm Company, as I said, on their own accord, prepared an assignment of $2,100 of the moneys to be disbursed by Detroit & Northern Savings and Loan Association. The assignment was in the form of a letter directing Detroit & Northern Savings to pay $2,100 of the money to the Yapurs. The deal at Detroit & Northern Savings was never consummated. Now again I say, it was signed by DiPalma alone and this was entireties property.

"*The Court:* Are you speaking about the assignment they claim you drew?

"*Mr. Grant:* I didn't draw that at all, that is the one I am mentioning.

"*The Court:* Is that the same one he is talking about?

"*Mr. Grant:* He didn't even mention this. I will get to that in a moment.

"*The Court:* You were speaking about another assignment.

"*Mr. Grant:* That is right—the first assignment.

"*The Court:* What is the date of that?

"*Mr. Grant:* October, 1952. It is signed by Benny DiPalma, one of the tenants by the entireties and directs Detroit & Northern Savings and Loan Association to withhold $2,100 of the money to be disbursed by that association and pay it to the Yapurs. That deal was never closed. Subsequent to that, petitioners became embroiled in this difficulty before the corporation [and] securities commission. At that hearing I represented petitioners. It was still expected that this deal with the Alteses would be closed at Detroit & Northern Savings and Loan Association and in contemplation of that the assignment was prepared. That is the one I prepared. Similarly that assignment is signed only by DiPalma and not by the wife. It was expected she would sign it but for reasons best known to herself she didn't.

"Now, throughout all the time counsel has referred to and prior to that I represented Mr. DiPalma.

"*The Court:* When did your representation of Merrill-Threm discontinue and DiPalma start?

"*Mr. Grant:* When I ceased representing Merrill-Threm—I can't answer that.

"*The Court:* You didn't represent both, I hope.

"*Mr. Grant:* I represented both of them.

"*The Court:* In this whole deal?

"*Mr. Grant:* No. I represented them on different matters but I didn't represent both on this thing. In fact, the situation is quite the contrary. That is evidenced by the fact that the first assignment was prepared not by me but by Mr. Threm himself. He contacted me about it and told me he had prepared an assignment. I said as far as I was concerned the assignment signed by the husband alone was no good. I said if you want these people to execute an assignment, why didn't you call me rather than do it yourself. So I wasn't in 2 directions at the same time. Mr. DiPalma, through this transaction and for some time prior, was indebted to me in a substantial sum and still is for services rendered in

connection with his difficulties. I told him I wanted some security for payment of my fees. As a result, the deed referred to was executed to me. That is the purpose of it.

"Now, the property was sold. Contrary to what he says it was executed for a consideration, it was given as security. The property was sold to the Alteses. The purchase was financed not by Detroit & Northern Savings and Loan Association but by Standard Federal Savings and Loan so that within the terms of the various assignments on which they count, this sale was not within the purview of that assignment. It was not covered by it. The money was disbursed and as a result of an accounting between my client and I, the money was paid to me. I had notice of their claim long before they ever got involved in this matter before the commission. Out of the proceeds I received $2,150. I had notice of their claim and they had notice of what I proposed to do about it because Mr. Threm and I had several arguments about it. I told him long ago that as far as I was concerned I was looking to DiPalma's property for payment to me. That accounts in part for the preparation of the assignment by him.
* * *

"*The Court* (to Mr. LaFata [attorney for plaintiffs]): He says he didn't do any work for Merrill-Threm Company after February, 1953, except in the Supreme Court.

"*Mr. Grant:* That had nothing to do with this case at all. As far as Merrill-Threm Company is concerned and this transaction here, the only relationship I had with the company was to obtain their license back for them from the corporation [and] securities commission and in connection with that it became necessary for me to turn over moneys to the complainant in that case that I received from the company for that purpose and if possible to obtain some kind of security for them, hence that assignment. Now the assignment was never executed. After that I had nothing whatsoever to do with it.

"*The Court:* The assignment was executed by Mr. DiPalma.

"*Mr. Grant:* I understand that.

"*The Court:* You said it wasn't executed.

"*Mr. Grant:* I am speaking about Mrs. DiPalma. After that date I had nothing to do with this transaction. I did not represent Merrill-Threm Company in any matter. I represented DiPalma in connection with this real-estate transaction and the closing at Standard Federal Savings and Loan Association. I represented him, I didn't represent Merrill-Threm Company at all. When I ceased being counsel for them I don't know. Mr. LaFata can tell you better than I because he succeeded me. The important thing is that in the closing of this transaction I was not representing them.

"To invoke summary proceedings it must be shown that the money was received while the attorney is representing the complainant. There is a Michigan case on it. There is no showing whatsoever that I represented Merrill-Threm Company. This is almost a year afterwards in March, 1953. That was the last I had anything to do with Merrill-Threm Company. This property deal wasn't closed until February of this year.

"*The Court:* You knew, Mr. Grant, at the time you took this deed as security that you had drawn an assignment for the benefit of your former client to secure money due him from DiPalma. Then you take from your client that security in the form of a deed and collect whatever moneys you can and wipe out his protection with reference to that claim. If he had filed this against the title to the property you would not have been able to deliver good title, would you?

"*Mr. Grant:* Yes.

"*The Court:* You have a duty to your clients. You can't for example, draw instruments to protect them and then go out and deal with the assignor and wipe out that security. Here is what I am going to do. If you have any authorities you would like to file

with the court I will be glad to read them before I make any decision.

"*Mr. Grant:* I would like to point out these questions to the court. There is this question about whether or not the money was received while I was acting as counsel for these people, that is the first thing. The second thing, your honor posed the question whether or not these assignments had been recorded, would they have clouded the title and prevented me from conveying marketable title. The answer is they would not and I will tell you why. The assignment purports to cover proceeds as distinguished from an estate or interest in the property itself. In addition, the property is entireties property and it is elementary that neither husband nor wife by their separate action can affect that unity of title.

"*The Court:* I do not think you can hide behind that as an attorney. That is my position."

The trial court in his opinion found as follows:

"In this case a petition is brought by the Merrill-Threm Company against Donald Grant, an attorney at law, under Court Rule No 4. The facts reveal that Donald Grant was an attorney representing the Merrill-Threm Company for some few years prior to the controversy herein involved; that Benny Di-Palma, a builder, had 2 homes on McKinney avenue for sale and they were partly completed. He solicited the services of the Merrill-Threm Company, real-estate brokers, to aid in the sale of the property. They obtained a purchaser for both properties and a payment of $2,100 was made, which was turned over to Mr. DiPalma. However, Mr. DiPalma ran into difficulties and was never able to make delivery of the completed home. The purchasers became impatient, finally filed a complaint before the Michigan [corporation and] securities commission, a hearing was had, Merrill-Threm being represented at that hearing by Donald Grant, and were ordered to forthwith return the $2,100. A check was made out by the

Merrill-Threm Company and delivered to Donald Grant, who in turn delivered the same check to the prospective purchasers, the Yapurs.

"On the following day, Merrill-Threm, through Donald Grant, took an assignment of property from Benny DiPalma with the purpose of protecting their $2,100, Mr. Grant acting in their behalf through an assignment covering the Alstead property, which was owned by Benny DiPalma and his wife. This assignment provided that when a sale was made and a mortgage placed upon the property, $2,100 of the mortgage money would be paid to Merrill-Threm in payment of their claim.

"The facts further reveal that some time in the late summer or early fall of 1952 Mr. Benny DiPalma, who was in a great deal of legal difficulty, was referred to Mr. Donald Grant for his help in working out his problems.

"It is the position of Mr. Grant that in October of 1953 Mr. Benny DiPalma was indebted to him for services in the amount of approximately $2,100. He then at that time took a deed from Mr. Benny DiPalma covering the Alstead property. It is admitted that this deed was solely for the purpose of security.

"This property in February of 1954 was sold to the Alteses and good title delivered to them, and at the time of this sale Mr. Donald Grant was paid his legal fees in the amount of $2,100 from the proceeds of that mortgage. The Merrill-Threm Company received nothing from the proceeds of the mortgage.

"The question here involved is: Can an attorney who represents a client, such as Merrill-Threm Company, in its relations with Mr. DiPalma, who was at that time unable to pay them, as shown by the above facts, to secure the repayment of that $2,100 through an assignment covering the property in question, which later became security to Mr. Donald Grant for services rendered to Mrs. Benny DiPalma, and by delivery of that deed to Mr. Grant, wipe out what protection his prior client had upon this par-

ticular piece of property? It is the position of the attorney that because this assignment to the Merrill-Threm Company was not executed by Benny DiPalma's wife and that the mortgagee therein named was different than the mortgagee who executed the mortgage on the property at the time of the sale in February of 1954; that because of these 2 facts and that he no longer represented the Merrill-Threm Company after the transaction of February, 1954, except in the prosecution of a case which was pending at that time in the Michigan Supreme Court, that this conduct was proper and that Merrill-Threm have no claim upon the moneys that he received as a result of the sale of the property.

"With this the court does not agree. The fact that Benny DiPalma's wife did not execute the original assignment of 2–9–53 is not a good defense to an attorney and the court does not believe because of the relationship of attorney and client that he can hide behind that defense, and the court further believes that the mortgagee named in the assignment of 2–9–53 was not the same as the one who executed the mortgage at the time of the sale of the property in February, 1954, makes any difference, because of the relationship of attorney and client, and that Mr. Donald Grant, the attorney, had notice of his prior client's claim upon this particular property. These defenses will avail him little and the court is of the opinion that a constructive trust exists between Donald Grant and the petitioners herein, and that Donald Grant should forthwith pay over the $2,100 that he received in February of 1954."

Defendant had in his possession exhibit No 7 together with other of plaintiffs' papers and did not deliver the same to plaintiffs until the instant summary proceeding. He retained such possession even after he claims his relations with plaintiffs ceased, and while acting for his own interest and contrary

to plaintiffs' interest, which interest he had, as plaintiffs' attorney, ostensibly sought to protect by preparing exhibit No 7 hereinbefore set forth.

On careful consideration of the statements of defendant, together with admitted exhibits, we consider that defendant made use of his knowledge of plaintiffs' affairs obtained by defendant while acting as attorney for plaintiffs, and evidently knew that plaintiffs were intended by both DiPalmas to be secured by exhibit No 7. Using such knowledge in such a manner, defendant thereby defeated the interests of his former clients to his own profit.

The finding of the trial court was substantially correct. For the reasons recited by the trial court, the defendant is indebted to plaintiffs in the sum, however, of $2,085.50 (which is $14.50 less than the amount found by the court) with interest thereon from the filing of the petition herein by the plaintiffs, February 25, 1954, to date. With the amendment thus made, the judgment appealed from is affirmed. The interest heretofore accrued is more than $14.50, the decrease in the judgment, hence, plaintiffs are still entitled to costs. The case is remanded to the trial court with instruction to enter judgment in accordance with this opinion.

CARR, C. J., and SHARPE, DETHMERS, and KELLY, JJ., concurred with REID, J.

BUTZEL, SMITH, and BOYLES, JJ., concurred in the result.